IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARION DAVIS-BARTEE<br>215 Nicholson Street<br>Wilkes-Barre, PA 18702 | :<br>:<br>:<br>: | CIVIL ACTION |
| Plaintiff, | :<br>: | No.: _____ |
| v. | :<br>:<br>: | **JURY TRIAL DEMANDED** |
| GEISINGER WYOMING VALLEY<br>MEDICAL CENTER<br>1000 East Mountain Blvd.<br>Wilkes Barre, PA 18711 | :<br>:<br>:<br>:<br>: | |
| Defendant. | :<br>: | |

**CIVIL ACTION COMPLAINT**

Ms. Marion Davis-Bartee (hereinafter referred to as "Plaintiff") by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.   Plaintiff has initiated this action to redress violations by Geisinger Wyoming Valley Medical Center (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, et. seq.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 et. seq.), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601, et. seq.), and the Pennsylvania Human Relations Act ("PHRA").[1]

---

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC") on or about October 4, 2025. Plaintiff's claims arising under the PHRA will mirror her federal claims arising under Title VII and the ADA.

2. Defendant discriminated against Plaintiff on the basis of her race and/or her actual/perceived disability or record of impairment, refused to accommodate Plaintiff, and terminated her in close proximity to her requests for, and use of, reasonable accommodations (including leave protected under the ADA and FMLA).

3. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

5. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

6. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

7. On or about October 4, 2024, Plaintiff filed a Charge of Discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the PHRC. Plaintiff has properly exhausted her administrative remedies before

initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Plaintiff is a Black/African-American adult individual, with an address as set forth in the caption.

10. Defendant is a Pennsylvania non-profit organization headquartered at an address as set forth in the caption, which operates a hospital and complete healthcare system throughout the Lehigh Valley.

11. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

**FACTUAL BACKGROUND**

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. In or about July of 2022, Defendant hired Plaintiff as a Dental Technician and employed her at its outpatient center located at 625 Baltimore Drive, Wilkes Barre, PA 18702, until unlawfully terminating her on or about August 22, 2024, as discussed herein.

14. During her two (2) years of employment, Plaintiff was a hard-working and dedicated employee and was primarily supervised by Defendant's Clinical Director, Maureen Decker ("Decker") (White/Caucasian) and Defendant's Clinical Lead, Michelle Jones ("Jones") (White/Caucasian).

**Facts Regarding Race Discrimination**

15. Plaintiff was the only Black/African-American employee working within her department and throughout her employment with Defendant was subjected to pervasive disparate and discriminatory treatment because of her race by Defendant's entirely White/Caucasian management.

16. By way of example only, and not intended to be a complete list, Decker would constantly:

   a. Treat only Plaintiff in a rude and condescending manner;

   b. Routinely demean, and talk down to, only Plaintiff;

   c. Made racially offensive baseless comments suggesting that Plaintiff was "stealing" medical supplies;

   d. Stereotyped Plaintiff in a discriminatory and offensive manner; and

   e. Subjected Plaintiff to increased scrutiny, selectively enforced policies against only her, and subjected her to pretextual discipline.

17. On or about June 21, 2024, and as a result of Decker's near constant disparate and discriminatory treatment and comments towards Plaintiff, Plaintiff complained to Defendant's Employee Relations Specialist, Allison Wolfe ("Wolfe") (White/Caucasian), and informed her that (1) Decker's aforementioned treatment was discriminatory and offensive based on her race; and (2) she was fearful of losing her job.

18. Wolfe claimed that she would "investigate" Plaintiff's complaints, but upon information and belief, Wolfe conducted only a cursory investigation.

19. On or about July 10, 2024, Wolfe informed Plaintiff that her "investigation" was closed and there were no findings of discrimination or harassment by Decker. Wolfe concluded by stating all communication should be "professional" moving forward.

4

20. Just a few weeks after Plaintiff's documented complaints of race discrimination, on or about July 29, 2024, Decker, Jones, and Wolfe summoned Plaintiff to a meeting to inform her that she would be suspended for three (3) days as a result of several alleged "professional conduct" concerns – all of which were completely pretextual and/or untrue.

21. Plaintiff inquired why these purported issues had never been documented previously and why Defendant had not followed its own progressive discipline policy. Plaintiff also voiced concerns that doing so now, just weeks after her protected complaints, amounted to retaliation.

22. Upon information and belief, other White/Caucasian similarly situated employees engaged in numerous policy violations but were not similarly disciplined.

23. On or about August 1, 2024, while serving her suspension, Plaintiff emailed Wolfe, Decker, and Jones to document her aforementioned complaints that: (a) she had not been properly counseled (per Defendant's own policy) for the aforementioned alleged professional conduct issues; (b) other White/Caucasian similarly situated employees had not been suspended for similar alleged misconduct; and (c) Plaintiff believed this to be retaliation for her prior complaints of discrimination made to Wolfe on or about July 10, 2024.

24. When Plaintiff returned to work on or about August 2, 2024, she learned a new White/Caucasian employee, Angela Curet ("Curet"), had been hired by Defendant and was directed to cross-train in plastic surgery and oral surgery (significantly overlapping Plaintiff's job duties).

25. Approximately ten (10) days later, on or about August 12, 2024, Plaintiff was working with Curet and noticed that Curet had placed surgical instruments in an incorrect area (which could lead to sterilization and/or contamination issues) and informed Curet in a

5

professional, polite, and informational manner about where said instruments were supposed to be placed.

26. A short time later, Plaintiff, Curet, and another co-worker were all entering a patient's room at the same time and Plaintiff asked if Curet was "rooming" the patient.

27. While this was a seemingly innocuous and simple question to maintain efficiency and patient safety, Curet for some reason became offended and stormed out of the room in an unprofessional manner – to the extent that the patient's relative commented that Curet's behavior was rude.

28. Upon information and belief, Curet then reported Plaintiff for being "mean" to her to Jones and Decker.

29. Following Curet's report, Jones and Decker jumped at the opportunity to abruptly terminate Plaintiff on or about August 22, 2024, for allegedly not acting professionally or getting along with Curet.

30. Upon information and belief, Curet was not disciplined in any way for her actions in front of a patient.

**Facts Regarding Disability Discrimination**

31. Separately, Plaintiff was also subject to disparate and discriminatory treatment as a result of her serious medical conditions and disabilities.

32. Plaintiff suffers from Carpal Tunnel Syndrome in her left hand/arm which causes her to suffer pain, swelling, stiffness, and mobility limitations. These conditions, at times, substantially limit Plaintiff from performing major life activities, such as using her hand, lifting, grasping, and holding items (among other major life activities).

6

33. Plaintiff was still able to perform her job, but at times, required reasonable accommodations, such as a brief six (6) week medical leave of absence to undergo and recover from surgery between on or about September 11, 2023, through November 14, 2023.

34. At all times, Plaintiff kept her supervisory team aware of her aforementioned disabilities and notified them anytime she needed time off (as a reasonable accommodation) to treat or care for her aforementioned disabilities.

35. However, Decker would make frequent snide comments implying that Plaintiff was unable to physically do her job (direct references to her aforementioned disabilities).

36. By way of example only, Decker made comments such as:

   a. "Oh Marion, looks like you get to dodge all the Sedations" (a reference to Plaintiff "getting out" of work); and

   b. You should be able to handle doing (a certain task) because that's ALL that you can do right now."

37. On or about November 14, 2023, Plaintiff returned to work with minor light duty restrictions, including no lifting over 10 pounds for four (4) weeks, which were gradually increased as tolerated restrictions on deep bending and twisting.

38. Plaintiff continued to perform the essential functions of her job until in or about late May 2024 when she suffered an exacerbation of her aforementioned serious medical conditions and disabilities, causing her serious pain and swelling in her left hand/arm.

39. Plaintiff's physician, Dr. Randall Culp, ordered a bone scan, diagnosed Plaintiff with Complex Regional Pain Syndrome ("CRPS") associated with her Carpal Tunnel Syndrome, and placed Plaintiff on restricted duties from on or about June 6, 2024, through on or about July 16, 2024.

40. Again, Plaintiff kept her supervisory team aware of her aforementioned disabilities and serious medical conditions, as well as her need for restricted duties and intermittent time off (as reasonable accommodations under the ADA and protected leave under the FMLA).

41. Plaintiff was then abruptly terminated (as discussed *supra)* just four weeks after her requests for time off to attend doctors' appointments and/or modified duty as a result of her aforementioned disabilities and serious medical conditions.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. During Plaintiff's employment with Defendant, she was subjected to a hostile work environment through pretextual discipline, racially offensive comments, and derogatory and disparate treatment because of her race and/or her objections to/complaints of race discrimination.

44. Instead of investigating Plaintiff's aforesaid complaints of race discrimination, Defendant's management failed to properly address them and left her legitimate concerns unresolved.

45. Within three (3) weeks of her latest complaints of race discrimination (discussed *supra*), Plaintiff was abruptly terminated on or about August 22, 2024.

46. Plaintiff believes and therefore avers that her race was a motivating and/or determinative factor in the termination of her employment by Defendant.

47. Plaintiff also believes and therefore avers that she was terminated because of her complaints about/objection to racial discrimination.

48. Defendant's actions as aforesaid constitute violations of Title VII.

## COUNT II
### Violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981)
([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. During Plaintiff's employment with Defendant, she was subjected to a hostile work environment through pretextual discipline, racially offensive comments, and derogatory and disparate treatment because of her race and/or her objections to/complaints of race discrimination.

51. Instead of investigating Plaintiff's aforesaid complaints of race discrimination, Defendant's management failed to properly address them and left her legitimate concerns unresolved.

52. Within three (3) weeks of her latest complaints of race discrimination (discussed *supra*), Plaintiff was abruptly terminated on or about August 22, 2024.

53. Plaintiff believes and therefore avers that but for her race she would not have been terminated from her employment with Defendant.

54. Plaintiff also believes and therefore avers that she was terminated because of her complaints about/objection to racial discrimination.

55. Defendant's actions as aforesaid constitute violations of Section 1981.

## COUNT III
### Violations of the ADA
([1] Actual/Perceived/Record of Disability Discrimination; [2] Failure to Accommodate; [3] Hostile Work Environment; and [4] Retaliation)

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. Plaintiff suffers from qualifying health conditions under the ADA which affect her ability (at times) to perform some daily life activities (set forth *supra*).

9

58. Plaintiff kept Defendant's management informed of her serious medical conditions, limitations, need for medical treatment, and other accommodations (including block or intermittent medical leave and minor job modifications as discussed *supra*).

59. Despite Plaintiff's aforementioned health conditions and limitations, she was still qualified and able to perform the duties of her job well with Defendant.

60. Plaintiff was subjected to pervasive hostility and animosity, including being issued pretextual discipline, after disclosing her disabilities and requesting reasonable accommodations for the same, such that she was subjected to a hostile work environment under the ADA.

61. Defendant failed to properly accommodate Plaintiff by issuing her pretextual discipline for requesting and/or utilizing reasonable accommodations (set forth *supra*) and then using the same as a means to terminate her.

62. Plaintiff believes and therefore avers that her actual/perceived disabilities or record of impairment were a motivating/determinative factor in Defendant's decisions to issue her discipline and terminated her employment.

63. Plaintiff also believes and therefore avers that she was issued discipline and terminated in retaliation for engaging in protected activity under the ADA (*i.e.*, requesting reasonable accommodations).

64. Defendant's actions as aforesaid constitute violations of the ADA.

## COUNT IV
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Wrongful Termination - Interference & Retaliation)**

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff was a full-time employee who worked for Defendant for more than 1 year within a location that employed at least 50 employees within 75 miles.

10

67. Leading up to her termination between September 2023 through August 2024, Plaintiff notified Defendant of her intent to utilize FMLA qualifying block and intermittent leave, had additional FMLA leave eligibility remaining, and inquired about using protected leave to treat and care for her own serious medical conditions.

68. Defendant terminated Plaintiff in close proximity to her most recent requests for, and usage of, FMLA-qualifying leave.

69. The motivating and/or determinative factor in deciding to terminate Plaintiff's employment was (a) her use of and/or requests for FMLA; (b) to prevent her from utilizing FMLA leave; and/or (c) to dissuade her or others from utilizing FMLA.

70. Defendant committed interference and retaliation violations of the FMLA by *inter alia*: (1) issuing Plaintiff discipline and/or terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate her and/or issue her discipline; (4) terminating Plaintiff to prevent her from taking FMLA-qualifying leave in the future; and (5) taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

11

**WHEREFORE**, Plaintiff prays that this Court enters an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

          Respectfully submitted,
          **KARPF, KARPF & CERUTTI, P.C.**

By: _____
          Ari R. Karpf, Esq.
          8 Interplex Drive, Suite 210
          Feasterville-Trevose, PA 19053
          (215) 639-0801
          akarpf@karpf-law.com

Dated: July 30, 2025